UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK____

THOMAS ALTO,

                  Plaintiff,                09-CV-7763 (DAB) (DF)

v.

HARTFORD LIFE INSURANCE COMPANY
and the GROUP LONG TERM DISABILITY
PLAN FOR EMPLOYEES OF THE
HEARST CORPORATION,

                  Defendants.

---

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Fusco, Brandenstein & Rada, P.C.
Attorneys for Plaintiff
180 Froehlich Farm Boulevard
New York, N.Y. 11797
(516) 496-0400

By:    Aba Heiman, Esq. (AH 3728)

TABLE OF CONTENTS

I.      PROCEDURAL BACKGROUND                                          1

II.     STATEMENT OF FACTS                                             3

III.    STANDARD OF JUDICIAL REVIEW                                    3

IV.     PLAINTIFF'S DISABILITY IS BASED UPON
        CREDIBLE, RELIABLE, MEDICAL EVIDENCE
        FROM HIS TREATING PHYSICIAN, BUT
        HARTFORD'S NON-EXAMINING, MEDICAL
        CONSULTANTS, DOCTORS ANTONELLI AND
        SIEGEL, FAILED TO PROVIDE RATIONAL
        ANALYSIS AND CAME TO CAPRICIOUS AND
        ERRONEOUS CONCLUSIONS, WHICH HARTFORD
        ADOPTED IN TERMINATING LTD BENEFITS.                           5

V.      THE OPINION OF DR. LOWELL AS TO PLAINTIFF'S
        FUNCTIONAL CAPACITY SHOULD BE GIVEN MORE
        WEIGHT THAN THE OPINION OF HARTFORD'S
        NON-EXAMINING PHYSICIAN CONSULTANTS.                          11

VI.     THE SURVEILLANCE AND VIDEOS DO NOT PROVE
        THAT PLAINTIFF CAN RETURN TO WORK.                            13

VII.    CONCLUSION                                                    14

TABLE OF AUTHORITIES

CASES

Black & Decker Disability Plan v. Nord, 538 U.S. 822, 123 S.Ct. 1965 (2003)    11

Bressmer v. Federal Express Corp. Long Term Disability Plan, 213 F.3d 625
(2d Cir. 2000)                                                                  8

Burgio v. Prudential Life Ins. Co. of America, 253 F.R.D. 219 (E.D.N.Y. 2008)   4

Chan v. Hartford Life Ins. Co., 2004 WL 2002988 (S.D.N.Y. Sept. 8, 2004)       14

Conrad v. Reliance Standard Life Ins. Co., 292 F.Supp.2d 233 (D.Mass. 2003)    11

Crespo v. UNUM Life Ins. Co. of America, 294 F.Supp.2d 980 (N.D. Ill. 2003)     6

Crocco v. Xerox Corp., 956 F.Supp. 129 (D.Conn.1997), *aff'd in part,*
  *rev'd on other grounds,* 137 F.3d 105 (2d Cir.1998)                              12

DiPietro v. Prudential Life Ins. Co., 03-CV-1018, 2004 WL 626818
(N.D.Ill. March 26, 2004)                                                          11

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989)                           3

Garg v. Winterthur Life, No. 07 CV 0510, 2008 WL 4004960
(E.D.N.Y. Aug. 26, 2008)                                                            4

Glenn v. Metropolitan Life Ins. Co., 128 S.Ct. 2343 (S.Ct. 2008)                    4

Glenn v. Metropolitan Life Ins. Co., 461 F.3d 660 (6th Cir. 2006)                   6

Glockson v. First UNUM Life Ins. Co., 04-CV-838, 2006 WL 1877140
(W.D.N.Y. July 6, 2006)                                                            14

Graham v. Sullivan, 794 F.Supp. 1045 (D.Kan. 1992)                                 10

Harrison v. Metropolitan Life Ins. Co., 417 F.Supp.2d 424 (S.D.N.Y. 2006)          3,4

Hogan-Cross v. Metro. Life Ins. Co., No. 08 Civ. 0012, 2008 WL 2938056
(S.D.N.Y. July 31, 2008)                                                            4

Jacoby v. Hartford Life and Accident Ins. Co., 07-CV-4627, 2008 WL 4361256
(S.D.N.Y. Sept. 24, 2008), 2009 WL 154342 (S.D.N.Y. Jan. 23, 2009)                 2,4,5

Kaufmann v. Metropolitan Life Ins.Co., 658 F.Supp.2d 643 (E.D. Pa. 2009)           11

Kruk v. Metropolitan Life Ins. Co., 07-CV-1533, 2009 WL 1481543
(D.Conn. May 26, 2009)                                                              4

Maida v. Life Ins. Co. of N. America, 949 F.Supp. 1087 (S.D.N.Y.1997)              13

Manginaro v. Welfare Fund of Local 771, I.A.T.S.E., 21 F.Supp.2d 284
(S.D.N.Y.1998)                                                                     12

McCauley v. First UNUM Life Ins. Co., 551 F.3d 126 (2d Cir. 2008)                   4

Melendez v. Astrue, 06-CV-5898, 2009 WL 1392526 (S.D.N.Y. May 19, 2009)            10

Mergel v. Prudential Life Ins. Co. of America, 09-CV-39, 2009 WL 2849084
(S.D.N.Y. Sept. 1, 2009)                                                            4

Mikrut v. UNUM Life Ins. Co. of America, 03-CV-1714, 2006 WL 3791417
(D.Ct. Dec. 21, 2006)                                                        12

Miller v. United Welfare Fund, 72 F.3d 1066 (2d Cir. 1995)                    4

Nagele v. Elec. Data Sys. Corp., 193 F.R.D. 94 (W.D.N.Y.2000)                 4

Pelchat v. UNUM Life Ins. Co. Of America, 2003 WL 21105075
(N.D. Ohio May 12, 2003)                                                     11

Peterson v. Continental Casualty Co., 116 F.Supp.2d 532 (S.D.N.Y. 2000)      12

Randazzo v. Federal Express Corp. Long Term Disability Plan, 99-CV-2895,
2000 WL 20698 (S.D.N.Y. Jan. 11, 2000)                                        8

Rementer v. Metropolitan Life Ins. Co., 04-CV-1148, 2006 WL 66721
(M.D.Fla. Jan. 10, 2006)                                                     11

Rubio v. Chock Full O'Nuts Corp., 254 F.Supp.2d 413 (S.D.N.Y. 2003)           3

Samedy v. First Unum Life Ins. Co. of Am., No. 05-CV-1431, 2006 WL 624889
(E.D.N .Y. Mar. 10, 2006)                                                     4

Slupinski v. First UNUM Life Ins. Co., 554 F.3d 38 (2d Cir. 2009)             7

Solnin v. GE Group Life Ass. Co., 03-CV-4857, 2007 WL 923083
(S.D.N.Y. March 23, 2007)                                                    14

Soron v. Liberty Life Assurance Company of Boston, 2005 WL 1173076
(N.D.N.Y. May 2, 2005)                                                       14

Tocker v. Philip Morris Companies, Inc., 470 F.3d 481 (2d Cir. 2006)          3

Trussel v. CIGNA Life Ins. Co. of NY, 552 F.Supp.2d 387 (S.D.N.Y. 2008)       4

Winter v. Hartford, 309 F.Supp.2d 409 (E.D.N.Y. 2004)                        14

STATUTES, RULES & REGULATIONS

29 U.S.C. § 1132(a)(1)(B)                                                     2

29 U.S.C. § 1132(g)(1)                                                        2

Local Civil Rule 56.1                                                         3

I.      PROCEDURAL BACKGROUND

Plaintiff worked as a product manager in the magazine division of the Hearst

Corporation ("Hearst") in Manhattan, starting on 10/1/95, and continuing for some 9½

years before he stopped working on 5/3/04 (1283, 1349).[1]  He was earning $68,130 per

year at that time (1325).  He received short-term disability ("STD") from Hartford Life

Ins. Co. ("Hartford") (1284) and, after a 180 day elimination period, was converted to

long-term disability ("LTD") benefits, under the Group Long Term Disability Plan for

Employees of the Hearst Corp. ("the Plan"), which paid 60% of those earnings, less any

offsets for governmental disability benefits (*e.g.* Social Security disability ("SSD")

benefits) (17, 35, 39, 551, 1266, 1349).  Hartford calculated his gross benefit as follows

(554): $5,677.50 earnings per month x 60% = $3,406.50.  After plaintiff received SSD on

2/5/06 (1132), he fully and promptly repaid Hartford for the overpayment of LTD

benefits which the payment of SSD created (1112), and left him with net LTD benefits of

$1,599.50 (488, 491, 554).  After two years of LTD (11/9/06), based on a definition of

disability that required inability to perform his own occupation, plaintiff was also

approved for LTD based on Hartford's more stringent definition of disability requiring

inability to perform any occupation (35-36, 64, 469).  That definition of disability says

"you must be prevented from performing one or more of the Essential Duties of Any

Occupation" (36) and then requires that any such occupation must pay at least 60% of

pre-disability earnings (35).

Hartford terminated plaintiff's benefits based upon physical disability effective

7/31/08 (185, 760, 1458).  Following an appeal by plaintiff through his attorney at that

---

[1] Parenthetical references are to page numbers within the record produced by defendants.

1

time, benefits were reinstated for two years based on mental disability, which have a 2-

year limitation on payment (1695), and ended on 7/30/10 (420-27). Hartford's final

determination to terminate benefits was dated 5/5/09 (420) and indicated that plaintiff had

the right to bring a civil action under ERISA. He did so on 9/8/09 with the filing of his

Complaint (Docket # 1), which sought relief pursuant to 29 U.S.C. § 1132(a)(1)(B) for

reinstatement of benefits based on physical disability, a declaratory judgment that he has

a physical disability which qualifies him for benefits under the group Policy/Plan

(Hartford fully insures the Hearst LTD Plan), reimbursement of costs borne by plaintiff in

maintaining this action (*i.e.*, filing fee and process servers), and for reasonable attorney

fees (subject to petition) pursuant to 29 U.S.C. § 1132(g)(1). Defendants provided their

Answer on 11/12/09 (Docket # 5), declining liability and asserting affirmative defenses,

but making no counterclaims.

At a Rule 16 conference on 1/15/10 in chambers, this Court issued a Scheduling

Order for briefing (Docket # 7), in which defendants were allowed to move for summary

judgment, plaintiff was allowed to oppose the motion, and defendants were given a reply

brief. On 1/20/10, plaintiff requested leave to cross move, but was denied by this Court

on 2/5/10 (Docket # 8). Plaintiff also memorialized his application for limited discovery

during the Rule 16 conference in a Notice of Order filed 2/19/10 (Docket # 9), [2]  which

was likewise denied by the Scheduling Order.

---

[2] "Counsel for plaintiff requested discovery to determine whether Hartford was operating
under a conflict of interests in its frequent utilization of and reliance upon the adverse
opinions of Jerome Siegel, M.D. as a medical consultant, including the matter *sub
judice...*," since this Court had previously entertained such limited discovery concerning
Dr. Siegel in Jacoby v. Hartford Life and Accident Ins. Co., 07-CV-4627, 2008 WL
4361256 (S.D.N.Y. Sept. 24, 2008), 2009 WL 154342 (S.D.N.Y. Jan. 23, 2009).

Defendants filed their motion for summary judgment, a statement of material facts pursuant to Local Civil Rule 56.1, and Declarations by Hartford employees on 6/30/10 (Docket # 10-15). Specifically, plaintiff moved to strike the Declaration by Mr. Luddy in its entirety, and paragraphs "7" through "11" of the Declaration by Ms. Gulino, on 7/13/10 (Docket # 20-21). Defendants opposed on 7/27/10 (Docket # 22) and plaintiff replied on 7/29/10 (Docket # 23). To date, the Court has not ruled on that motion.

## II. STATEMENT OF FACTS

Plaintiff generally adopts defendants' Local Civil Rule 56.1 Statement of Material Facts, subject to the Counterstatement of Material Facts enclosed, and the factual references to the record accompanying his arguments, *infra*.

## III. STANDARD OF JUDICIAL REVIEW

Under ERISA, the standard of judicial review is *de novo*, unless the plan confers discretionary authority upon the claims administrator to construe the terms of the plan. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Even if discretionary authority is in the plan, it must be properly delegated to the claims administrator for the claims administrator to have discretionary authority. Rubio v. Chock Full O'Nuts Corp., 254 F.Supp.2d 413, 422-23 (S.D.N.Y. 2003). Here both the governing Hearst LTD Plan and the Hartford LTD Policy have language conferring discretionary authority (35, 1706), so this Court should show deference to Hartford's determination to terminate plaintiff's LTD benefits, unless plaintiff can demonstrate that such determination was: not supported by substantial evidence; arbitrary or capricious; or unreasonable. Tocker v. Philip Morris Companies, Inc., 470 F.3d 481, 483-84 (2d Cir. 2006); Harrison v. Metropolitan Life Ins. Co., 417 F.Supp.2d 424, 437 (S.D.N.Y. 2006).

Where aspects of the claims administrator's review suggest that its adverse decision was influenced by a conflict of interests, the court's deference might be far less, depending upon the evidence considered. McCauley v. First UNUM Life Ins. Co., 551 F.3d 126, 128 (2d Cir. 2008), and case specific factors may individually or together act as a "tiebreaker" in favor of the plaintiff.  Glenn v. Metropolitan Life Ins. Co., 128 S.Ct. 2343, 2348-51 (S.Ct. 2008).  Since an inherent/structural conflict of interests is, in and of itself, insufficient to show a conflict of interest affected the adverse claim determination, discovery, even under a deferential standard of review, has been authorized, where there is a structural conflict of interests, to determine whether facts may tend to show a claims administrator has acted in a conflicted manner. Jacoby v. Hartford Life and Accident Ins. Co., 07-CV-4627, 2008 WL 4361256 (S.D.N.Y. Sept. 24, 2008), 2009 WL 154342 (S.D.N.Y. Jan. 23, 2009); Harrison, 417 F.Supp.2d at 436-37; Burgio v. Prudential Life Ins. Co. of America, 253 F.R.D. 219, 230 (E.D.N.Y. 2008); Trussel v. CIGNA Life Ins. Co. of NY, 552 F.Supp.2d 387, 390-91 (S.D.N.Y. 2008); Garg v. Winterthur Life, No. 07 CV 0510, 2008 WL 4004960, at * 7 (E.D.N.Y. Aug. 26, 2008); Hogan-Cross v. Metro. Life Ins. Co., No. 08 Civ. 0012, 2008 WL 2938056, at * 2 (S.D.N.Y. July 31, 2008); Samedy v. First Unum Life Ins. Co. of Am., No. 05-CV-1431, 2006 WL 624889, at * 2 (E.D.N .Y. Mar. 10, 2006); Nagele v. Elec. Data Sys. Corp., 193 F.R.D. 94, 109-11 (W.D.N.Y.2000).  Such discovery does not impermissibly expand the claims record on review by the court, Miller v. United Welfare Fund, 72 F.3d 1066 (2d Cir. 1995), but allows the court to properly weight conflict of interest as a factor in weighing the evidence of record. Kruk v. Metropolitan Life Ins. Co., 07-CV-1533, 2009 WL 1481543 * 2-3 (D.Conn. May 26, 2009); Mergel v. Prudential Life Ins. Co. of America, 09-CV-39,

2009 WL 2849084 * 1-2 (S.D.N.Y. Sept. 1, 2009). Plaintiff's application for limited

discovery to determine whether Hartford was operating under a conflict of interest, by

once again utilizing Jerome Siegel, M.D. in this case (as it did in Jacoby) as its basis for

finding plaintiff was no longer physical disabled, was denied.

> IV.   PLAINTIFF'S DISABILITY IS BASED UPON
> CREDIBLE, RELIABLE, MEDICAL EVIDENCE
> FROM HIS TREATING PHYSICIAN, BUT
> HARTFORD'S NON-EXAMINING, MEDICAL
> CONSULTANTS, DOCTORS ANTONELLI AND
> SIEGEL, FAILED TO PROVIDE RATIONAL
> ANALYSIS AND CAME TO CAPRICIOUS AND
> ERRONEOUS CONCLUSIONS, WHICH HARTFORD
> ADOPTED IN TERMINATING LTD BENEFITS.

Hartford's initial basis for termination of benefits based on physical disability was

explained in their letter of 7/31/08 (185). They first noted (187) that disability had been

established after plaintiff suffered from a left hip replacement due to osteoarthritis, a

pulmonary embolism, deep vein thrombosis ("DVT"), venous insufficiency and

neuropathy secondary to chemotherapy treatment for idiopathic thrombocytopenia

("ITP"), disequilibrium syndrome with vertigo, a history of a seizure disorder, etc.

A file review by Hartford's non-examining consultant, Elena Antonelli, M.D.,

was performed on 7/11/08 (727-33). She reviewed records from plaintiff's treating

physicians, mostly Dr. Lowell and Dr. Roca, and noted that by 9/04 the DVT and

shortness of breath were resolving, but then by 10/04, plaintiff was still having left hip

pain with an ulcer, swollen legs, he had to use a cane, and complained of malaise and

fatigue. In 3/05, he still had the fatigue following chemotherapy, complained about

shortness of breath, was de-conditioned, and his legs ached. There was more of the same

in 7/05, but he was taking two walks daily, albeit less than ¼ mile each time. In 12/05, he

was complaining about migraine headaches, fatigue, and left leg cramping, and, consistently, ankle edema (swelling) was found on Dr. Lowell's physical examination. On 2/1/06, Dr. Lowell found plaintiff to be "totally off balance," noted severe right hip pain, unsteady gait with vertigo and ankle edema.  On 2/17/06, plaintiff reported he had fallen and became exhausted by day's end.  Dr. Antonelli reviews a Hartford Physical Capacities Evaluation ("PCE") form completed by Dr. Lowell on 3/28/06 (1168-71), estimating that in an 8-hour day that plaintiff could sit 4 hours, but indicated "0" hours for standing or walking.  Dr. Antonelli interpreted that to mean that Dr. Lowell was saying plaintiff couldn't stand at all (729), but that makes no sense in light of her acknowledgment that Dr. Lowell had also stated plaintiff was walking ¼ mile twice per day.  Accordingly, it seems far more reasonable to conclude that all Dr. Lowell was saying was that plaintiff could neither walk for an hour or more, nor stand for more than an hour within an 8-hour day.  Reliance upon an unwarranted inference has been held to be arbitrary and capricious. Crespo v. UNUM Life Ins. Co. of America, 294 F.Supp.2d 980 (N.D. Ill. 2003).  Reliance upon a treating physician's check-box answer where other evidence from the same doctor was to the contrary has also been held to be arbitrary and capricious. Glenn v. Metropolitan Life Ins. Co., 461 F.3d 660, 672 (6th Cir. 2006), aff'd, 128 S.Ct. 2343 (S.Ct. 2008).

Hartford adopted the unreasonable misrepresentation of Dr. Lowell's PCE by Dr. Antonelli in their termination notice of 7/31/08 as if to say, "we're not arbitrary because we relied upon what an independent doctor concluded."  Of course, Hartford is the claims fiduciary here, not the doctor, so Hartford retains the responsibility to have a rational basis for terminating a beneficiary's LTD benefits, and misrepresenting what a treating

6

physician says is arbitrary and capricious. *See* Slupinski v. First UNUM Life Ins. Co.,
554 F.3d 38, 51-53 (2d Cir. 2009).

There was another PCE by Dr. Lowell in 8/06 (1028-29) showing sitting was only
2 hours in an 8-hour day and again showing "0" for standing and walking, but explaining
along side his answer, "very restless constant pain in leg." He also noted that plaintiff
could drive for ½ hour at a time.

Plaintiff's condition, insofar as his physical disability, was apparently the same
for another year and in 9/07, Dr. Antonelli says (730) he saw Dr. Lowell for a routine
visit and was noted to be "frail," dizzy, complaining of pain, tingling of his ankles
(neuropathy), weak, off balance, and had difficulty walking. In 10/07, Dr. Antonelli
notes he complained to Dr. Lowell about multiple falls, bruising his knee, and on
physical examination it was noted that he could not tandem walk and had a positive
Romberg's test (both showing he was off balance). In 12/07, another visit with Dr.
Lowell revealed plaintiff with left-sided pain (hip, knee, ankle foot), using a cane, with
abnormal gait, and again complaining about falling. In 1/08, Dr. Lowell noted bilateral
hip and leg pain with leg swelling. The last treatment notes from Dr. Lowell that Dr.
Antonelli reviewed were for 3/28/08 and 4/30/08 (730-31) and, as pertinent to plaintiff's
physical condition, he complained of more fatigue, pain in his shoulders, elbows, hands,
legs and knees, and falls. Dr. Lowell found limited movement of the hips with abnormal
gait.

Dr. Antonelli said she spoke with Dr. Lowell on 7/3/08 (731-32). As to physical
disability at that time, he noted plaintiff no longer needed a wheelchair, but still uses a
cane, and has swelling of his ankes. Dr. Antonelli said she also spoke to Dr. Roca, who

had treated plaintiff solely for ITP, but that has since stabilized and is not disabling. Dr.
Antonelli concluded (732) that plaintiff could walk and stand occasionally and carry with
his left hand, since he uses the right hand to manage the cane. She also claims that, "[h]e
does not have any apparent limitations on his ability to sit ...." Thus she concludes he
can do "light duty." There is no correspondence of record from either Dr. Roca or Dr.
Lowell confirming the content of the telephone conversations described by Dr. Antonelli,
so as noted in our Counterstatement of Material facts, they remain hearsay and inherently
unreliable. While it may be true that ERISA claims administrators are not bound by the
federal rules of evidence, Bressmer v. Federal Express Corp. Long Term Disability Plan,
213 F.3d 625 (2d Cir. 2000), that doesn't mean Hartford was justified in reliance upon an
unconfirmed verbal report by plaintiff's treating physician. See Randazzo v. Federal
Express Corp. Long Term Disability Plan, 99-CV-2895, 2000 WL 20698, fn. 1 (S.D.N.Y.
Jan. 11, 2000) ("I am also declining to consider the paraphrased oral testimony of Dr.
Agus as reported by the two UniCare physician consultants. Although this evidence
attempts to limit Dr. Agus' finding of total disability to only those jobs requiring physical
exertion, it is inherently unreliable hearsay").

Curiously, we do not see any mention by Dr. Antonelli of Dr. Lowell's Attending
Physician's Statement of 9/17/07 (982-83). Dr. Lowell mentions, *inter alia*, that plaintiff
is: "Not able to sit 2↑ [secondary] to leg swelling and pain." That's important in light of
Dr. Antonelli's statement regarding plaintiff that "[h]e does not have any apparent
limitations on his ability to sit ...." Did Hartford not provide that report to Dr. Antonelli?
Did she overlook it? If so, was her conclusion based upon substantial evidence?

8

Bilateral leg swelling (edema) and pain was not an isolated finding by Dr. Lowell. Without returning to 2004, even if we only focus on Dr. Lowell's treatment notes starting around the time of Hartford's termination of benefits based on disability (7/08), we see bilateral edema of plaintiff's feet on 5/28/08 (1592-93), 6/27/08 (1595-96), 7/25/08 (1597) with added, handwritten comments by Dr. Lowell, "Left leg more swollen... Poor Balance. Leg pain," and then "toes on left foot numbness-swollen" (1598), again on 8/7/08 (1600) ("Bilat edema"), and 8/22/08 (1602) with handwritten comments: "Balance has become worse – 6-7 falls." Bilateral edema of the lower extremities is again documented on 9/26/08 (1605), and 10/29/08 (1607).

Dr. Siegel, Hartford's other non-examining reviewer (1487-99), reviewed Dr. Lowell's treatment notes on 4/27/09 in varying detail from 4/12/04 through 3/28/08, but then, curiously, there's no specific mention of the treatment notes discussed above, *i.e.* from 5/28-10/29/08. Instead he just says that Mr. Alto was followed at monthly intervals throughout 2008 (1493). Dr. Siegel says he spoke to Dr. Lowell (1495) and that Dr. Lowell "does not believe that Mr. Alto could return to work." According to Dr. Siegel, Dr. Lowell "had difficulty specifically articulating why Mr. Alto would be unable to return to sedentary-light physical demand work activity." Finally, according to Dr. Siegel, "Dr. Lowell believes that Mr. Alto's main problems ... appear to be emotional and psychiatric in origin." While Dr. Siegel apparently argued that physical examinations had "no acute finding" (he does not clarify what he means by that), he admits that to the contrary, "Dr. Lowell points out that Mr. Alto has had bilateral leg swelling...." Thus it appears that the bilateral leg swelling is precisely the "acute finding" Dr. Siegel argued against. Either Dr. Siegel didn't go into details about Dr.

9

Lowell's treatment notes from 5/08-10/08 because he didn't read them or because he was bent on concluding that "as of 8/1/08 and beyond" plaintiff could perform "sedentary-light physical demand work activities" (1498) and they were obvious evidence to the contrary. Dr. Siegel then seems to fudge another excuse for discounting Dr. Lowell's disagreement with him based on plaintiff's bilateral leg swelling, that is, Dr. Siegel complains that Dr. Lowell's reports contain "no girth measurements of his legs" to prove that his legs were swelling (1499). Yet he doesn't say that Dr. Lowell is mistaken about his repeated observation that plaintiff's legs were swollen and he even admits that "[t]he ability for him to elevate his legs during the workday may be important if Mr. Alto's leg swelling becomes problematic." Dr. Siegel says, "if Mr. Alto's leg swelling becomes problematic" (?!?!). Once again, we have to wonder if Dr. Siegel ever looked at Dr. Lowell's records from 5/08 through 10/08 because it was obviously the major problem! That said, if Mr. Alto's leg swelling was a persistent problem, and he has to elevate his legs during the workday, as Dr. Siegel observes, that factor alone precludes sedentary employment. Graham v. Sullivan, 794 F.Supp. 1045, 1051-52 (D.Kan. 1992); Melendez v. Astrue, 06-CV-5898, 2009 WL 1392526 * 9 (S.D.N.Y. May 19, 2009). Hartford's termination notice of 7/31/08 even mentioned that during a phone interview plaintiff on 8/16/07 (187): "You had to keep your legs elevated during the day because your lower legs were painful with swelling, you could not walk without a cane ...." So, Hartford was aware of that severe limitation on plaintiff's ability to function.

Dr. Antonelli's failure to mention Dr. Lowell's Attending Physician's Statement of 9/17/07 (982-83) and Dr. Siegel's failure to mention Dr. Lowell's treatment notes from 5/08-10/08, all of which document bilateral leg and/or foot swelling with pain, at best,

10

suggest a selective review of the medical evidence of record by the non-examining,

physician-consultants which Hartford relied upon in terminating plaintiff's LTD benefits.

Selective review of medical evidence suggests Hartford's decision was influenced by an

inherent conflict of interests and, in more importantly, is evidence of arbitrary and

capricious adjudication. *E.g.,* Conrad v. Reliance Standard Life Ins. Co., 292 F.Supp.2d

233 (D.Mass. 2003); DiPietro v. Prudential Life Ins. Co., 03-CV-1018, 2004 WL 626818

(N.D.Ill. March 26, 2004); Pelchat v. UNUM Life Ins. Co. Of America, 2003 WL

21105075 (N.D. Ohio May 12, 2003); Rementer v. Metropolitan Life Ins. Co., 04-CV-

1148, 2006 WL 66721 (M.D.Fla. Jan. 10, 2006).

> V.     THE OPINION OF DR. LOWELL AS TO PLAINTIFF'S
>         FUNCTIONAL CAPACITY SHOULD BE GIVEN MORE
>         WEIGHT THAN THE OPINION OF HARTFORD'S
>         NON-EXAMINING PHYSICIAN CONSULTANTS.

While an ERISA claims administrator is not required to "accord special deference

to the opinions of treating physicians," it still "may not arbitrarily refuse to credit a

claimant's reliable evidence, including the opinions of a treating physician."

Black & Decker Disability Plan v. Nord, 538 U.S. 822, 123 S.Ct. 1965, 1970, 1972

(2003). In Kaufmann v. Metropolitan Life Ins.Co., 658 F.Supp.2d 643, 649-50 (E.D. Pa.

2009), the court construed Nord, in pertinent part, as follows:

> Thus, *Nord* did not grant a plan administrator a license to
> disregard or only cursorily consider the opinions of the physicians
> who were familiar with and treated the insured.
>
> The *Nord* Court acknowledged that a treating physician in many
> cases has a better opportunity to know and observe the patient than
> do consultants retained by a plan. *Id.* at 832, 123 S.Ct. 1965.
> Nevertheless, it concluded that deference may not be warranted
> when a treating physician had only a short relationship with the
> patient or when the plan's retained consultant is a specialist and the
> treating physician is a general practitioner. *Id.*

11

> The Supreme Court's instruction does not authorize a plan to give conclusive weight to an unreliable report of a non-treating physician. Nor does it insulate plan decision makers whenever they reject a treating physician's opinion in favor of a consultant's opinion.

Both reports from Hartford's non-examining consultants were unreliable, on their face, in that they ignored, or tried to ignore, critical evidence in support of plaintiff's claim, namely that he suffered from bilateral swelling with pain of his legs and/or feet, which not only made it difficult for him to walk, but also prevented him from performing prolonged sitting, as would be required in sedentary work.  Dr. Lowell had been treating plaintiff for more than four years, typically on a monthly basis, prior to Hartford's determination to terminate LTD benefits.  He had a longitudinal relationship with the patient, his records show he had observed and examined plaintiff at every visit, and was therefore in a much better position to assess his condition than a non-examining consultant. *See also* 20 C.F.R. § 404.1527(d) (factors used in weighing opinions of physicians).  Where a disability claims administrator rejects the opinion of a treating physician in favor of non-examining file reviewers, who fail to consider complaints of pain (*e.g.*, as with Mr. Alto's legs and feet), such determination is arbitrary and capricious. Mikrut v. UNUM Life Ins. Co. of America, 03-CV-1714, 2006 WL 3791417 (D.Ct. Dec. 21, 2006).  Similarly, another example of arbitrary and capricious adjudication is where a disability claims administrator uncritically accepts the opinion of its own consultants.  Peterson v. Continental Casualty Co., 116 F.Supp.2d 532, 540-41 (S.D.N.Y. 2000), *citing* Crocco v. Xerox Corp., 956 F.Supp. 129, 140 (D.Conn.1997), *aff'd in part, rev'd on other grounds,* 137 F.3d 105 (2d Cir.1998), Manginaro v. Welfare

Fund of Local 771, I.A.T.S.E._, 21 F.Supp.2d 284, 305-306 (S.D.N.Y.1998), Maida v.
Life Ins. Co. of N. America, 949 F.Supp. 1087, 1092-93 (S.D.N.Y.1997).

**VI.    THE SURVEILLANCE AND VIDEOS DO NOT PROVE
THAT PLAINTIFF CAN RETURN TO WORK.**

On 12/19/07, from 6:00 A.M. to 4:00 P.M., plaintiff was seen outside his
home for one minute, walking down and then back up the stairs of his house (89-90). The
next day, on 12/20/07 at 10:33 A.M., plaintiff was seen for another minute placing his
empty recycle bin on top of his empty garbage can and wheeling them toward his house
with his left hand while using a cane with his right hand (91). The investigator tells us
plaintiff was later observed at 1:29 leaving in a Hyundai, but lost him in traffic by 1:30
P.M. (92). There is video of him returning home at 3:28 P.M., exiting the car with a
small white bag in his left hand, a cane in his right hand, walking up his stairs. Two more
days of surveillance were procured for 1/30 and 1/31/08 (94). On 1/30/08, plaintiff was
not observed to leave his home until 1:26 P.M. (95), again carrying a white plastic bag in
his left hand and a cane in his right hand. Three minutes later, plaintiff went back into his
house. On 1/31/08 at 9:00 A.M., plaintiff was once again observed walking with his cane
and retrieving a recycle bin from the end of his driveway (96). Then there was no activity
until 11:44 A.M., when plaintiff drove the Hyundai to the Pantry Diner and had lunch
with two unidentified females (from 12:06 to 1:15 P.M.) (97). He then dropped off the
females at Farmer Joel's Marketplace, went back to the diner for two minutes, returned to
the Marketplace, got out of his car, used his cane to walk inside, spoke to some guy for
17 minutes, got back into his car, and drove back home by 1:49 P.M.(98). From 3:48 to
4:02 P.M., plaintiff was then seen carrying firewood up his stairs with his left hand and
using his cane with his right hand.

13

Thus on the first three days of surveillance, 75% of the sample period, next to nothing happened. On the fourth day of surveillance, he had lunch at a local diner with two females, talked to some guy at a market for 15 minutes, and then went home and brought firewood up his stairs. From that, Hartford concluded his activity was inconsistent with his alleged disability and acted as if they had caught him red-handed. Several local cases have debunked such pathetic attempts to discredit the disabled: Winter v. Hartford, 309 F.Supp.2d 409, 415 (E.D.N.Y. 2004); Chan v. Hartford Life Ins. Co., 2004 WL 2002988 * 28 (S.D.N.Y. Sept. 8, 2004) ("Chan's observed walking, riding in a car, and even brief shuffling of papers, do not substantially address her ability to perform her prior occupation"); Glockson v. First UNUM Life Ins. Co., 04-CV-838, 2006 WL 1877140 * 5-6 (W.D.N.Y. July 6, 2006) (four or five hours of activity on three separate days is not inconsistent with a person who remains incapable of performing sedentary work); Solnin v. GE Group Life Ass. Co., 03-CV-4857, 2007 WL 923083 * 10 (S.D.N.Y. March 23, 2007); Soron v. Liberty Life Assurance Company of Boston, 2005 WL 1173076 * 11 (N.D.N.Y. May 2, 2005). It was arbitrary and capricious for Hartford to have relied upon the surveillance of plaintiff in terminating his LTD benefits.

## VII.   CONCLUSION

Defendants' motion for summary judgment should be denied. Hartford's decision to terminate plaintiff's benefits based upon physical disability on 7/31/08 should be reversed. Plaintiff should be declared to be disabled within the meaning of the governing Plan and Policy. Payments should be reinstated effective 7/31/10. Plaintiff should receive the relief requested in his Complaint.

Dated: Woodbury, New York
       August 3, 2010

Respectfully,

Fusco, Brandenstein & Rada, P.C.
Attorneys for Plaintiff
180 Froehlich Farm Boulevard
Woodbury, New York 11797
(516) 496-0400

By:    /s/ _Aba Heiman Esq._
        Aba Heiman, Esq. (AH 3728)

## CERTIFICATE OF SERVICE

I, Aba Heiman, Esq., hereby certify and affirm that a true and correct copy of

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'

MOTION FOR SUMMARY JUDGMENT was served via ECF and first class mail on this

day, August 4, 2010, upon:

Michael H. Bernstein, Esq. &
Elizabeth R. Chesler, Esq.
Sedgwick, Detert, Moran & Arnold LLP
Attorneys for Defendants
125 Broad Street, 39th Floor
New York NY 10004-2400

Aba Heiman, Esq. (AH 3728)

15