UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
THOMAS ALTO,

                                                 Plaintiff,        Civil Action No.: 09-CIV-7763(DAB)

            – against –                        DOCUMENT
                                                                        ELECTRONICALLY FILED

HARTFORD LIFE INSURANCE COMPANY
and the GROUP LONG TERM DISABILITY PLAN
FOR EMPLOYEES OF THE HEARST CORPORATION,

                                               Defendants.
------------------------------------------------------------------------X

# DEFENDANTS' REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT

                                                      SEDGWICK, DETERT, MORAN & ARNOLD LLP
                                                      **Attorneys for Defendants**
                                                        HARTFORD LIFE INSURANCE COMPANY
                                                     and the GROUP LONG TERM DISABILITY PLAN
                                                     FOR EMPLOYEES OF THE HEARST CORPORATION
                                                   125 Broad Street, 39th Floor
                                                     New York, New York 10004-2400
                                                     Telephone: (212) 422-0202
                                                     Facsimile:  (212) 422-0925
                                                     [SDMA File No. 02489-000032]

Of Counsel:

   Michael H. Bernstein
   Elizabeth R. Chesler

NY/590281v1

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................. 1

    POINT I:

    THE COURT MUST REVIEW HARTFORD'S DECISION UNDER
    THE ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW ............................. 1

    POINT II:

    HARTFORD CONDUCTED A THOROUGH INVESTIGATION OF
    ALTO'S LTD BENEFIT CLAIM AS PART OF ITS FULL AND FAIR REVIEW ....... 2

        A.    ALTO IGNORES THE ROLE THAT MENTAL DISABILITY
              PLAYS IN THE ANALYSIS OF HIS CLAIM ............................................... 3

        B.    THE RECORD DOES NOT SUPPORT ALTO'S CLAIM THAT
              HE WAS PHYSICALLY DISABLED DUE TO BILATERAL
              LEG EDEMA. ................................................................................................. 3

        C.    HARTFORD PROPERLY CONSIDERED DR. ANTONELLI'S
              AND DR. SIEGEL'S INDEPENDENT MEDICAL PEER
              REVIEW REPORTS ........................................................................................ 6

            1.    Dr. Antonelli and Dr. Siegel Considered All of the Relevant
                  Medical Documentation ........................................................................ 6

            2.    Hartford is Entitled to Consider Dr. Antonelli's and Dr. Siegel's
                  Summaries of their Conversations with Alto's Treating Physicians ..... 8

        D.    HARTFORD PROPERLY CONSIDERED THE SURVEILLANCE
              VIDEO FOOTAGE .......................................................................................... 9

CONCLUSION ......................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Billinger* v. *Bell Atlantic*,
 240 F. Supp. 2d 274 (S.D.N.Y. 2003), *aff'd* 124 Fed. App'x 669 (2d Cir. 2004) .................................. 9

*Black & Decker Disability Plan* v. *Nord*,
 538 U.S. 822 (2003) .................................................................................................................. 5, 8

*Brown* v. *The Board of Trustees of the Building Service 32B-J Pension Fund*,
 392 F.Supp.2d 434 (E.D.N.Y. 2005) .............................................................................................. 9

*Conkright* v. *Frommert*,
 130 S.Ct. 1640 (2010) .................................................................................................................... 2

*Corvi* v. *Eastman Kodak Co. Long Term Disability Plan*,
 No. 01 cv 365(DLC), 2001 WL 484008 (S.D.N.Y. May 8, 2001) ............................................... 10

*Cusson* v. *Liberty Life Assurance Co. of Boston*,
 592 F.3d 215 (1st Cir. 2010) ........................................................................................................... 9

*Durakovic* v. *Building Service 32 BJ Pension Fund*,
 609 F.3d 133 (2d Cir. 2010) ....................................................................................................... 5, 8

*Firestone Tire and Rubber Co.* v. *Bruch*,
 489 U.S. 101 (1989) ........................................................................................................................ 1

*Fortune* v. *Group Long Term Disability Plan for Employees of Keyspan Corp.*,
 637 F. Supp. 2d 132 ........................................................................................................................ 4

*Graham* v. *Sullivan*,
 794 F.Supp. 1045 (D. Ka. 1992) ................................................................................................. 5, 6

*Harrison* v. *Metropolitan Life Ins. Co.*,
 417 F.Supp.2d 424 (S.D.N.Y. 2006) .............................................................................................. 2

*Hobson* v. *Metropolitan Life Ins. Co.*,
 547 F.3d 75 (2d Cir. 2009) .............................................................................................. 2, 4, 5, 8

*King* v. *Cigna Corp.*,
 No 06-cv-6203T, 2008 WL 795823 (W.D.N.Y. March 24, 2008) ................................................ 9

*Magee* v. *Metropolitan Life Ins. Co.*,
 632 F. Supp. 2d 308 (S.D.N.Y. 2009) ............................................................................................ 4

*McCauley* v. *First UNUM Life Ins. Co.*,
 551 F.3d 126 (2d Cir. 2008) ........................................................................................................... 2

## **TABLE OF AUTHORITIES**
Page(s)

*Melendez* v. *Astrue*,
  630 F.Supp.2d 308 (S.D.N.Y. 2009) .................................................................................. 5

*Metropolitan Life Ins. Co.* v. *Glenn*,
  128 S.Ct. 2343 (2008) ................................................................................................... 1, 2

*Rizzi* v. *Hartford Life and Accident Ins. Co.*,
  613 F.Supp.2d 1234 (D.N.M. 2009), *aff'd* No. 09-cv-2107, 2010 WL 2473858 (10th Cir. June 18, 2010) ........ 3

*Schnur* v. *CTC Communications Corp. Group Disability Plan*,
  No 05-cv-3297(RJS), 2010 WL 1253481 (S.D.N.Y. Mar. 29, 2010) ............................. 5

*Tocker* v. *Philip Morris Companies, Inc.*,
  470 F.3d 481 (2d Cir. 2006) ............................................................................................ 2

**STATUTES**

Employee Retirement Income Security Act of 1874 ("ERISA"),
  §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) ....................................................................... 1

Fed. R. Civ. P., Rule 56 ......................................................................................................... 1

**PRELIMINARY STATEMENT**

Defendants Hartford Life Insurance Company ("Hartford") and the Group Long Term Disability Plan for Employees of the Hearst Corporation (the "Plan" or "Hearst Plan") respectfully submit this Memorandum of Law in Reply to Plaintiff Thomas A. Alto's ("Alto") opposition and in further support of their motion for summary judgment pursuant to Rule 56, Fed. R. Civ. P., dismissing Alto's Complaint for relief under the Employee Retirement Income Security Act of 1874 ("ERISA"), §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B).

In his opposition, Alto acknowledges that the appropriate standard of review is the deferential arbitrary and capricious standard. While Alto repeatedly states (in conclusory fashion) that Hartford's adverse benefit determination was arbitrary and capricious, he does not identify any evidence in the administrative record to support his claim of physical disability under the terms of the Plan. Alto also criticizes Hartford's claim procedure for placing undue reliance on the surveillance video footage and the allegedly flawed opinions of the independent peer reviewers retained to review his claim. However, these arguments are completely undermined by the administrative record, which establishes that the independent peer reviewers provided accurate and thorough reviews of the medical documentation submitted and that Hartford did not give either of the reviewers' opinions, or the surveillance video footage, dispositive weight. Notably, Alto's opposition fails to address Hartford's argument that he is not entitled to recover the ancillary fringe benefits sought in his Complaint.[1]

Accordingly, and for the reasons set forth more fully below, this Court should grant Defendants' Motion for Summary Judgment and dismiss Alto's Complaint in its entirety.

**ARGUMENT**

**POINT I**
**THE COURT MUST REVIEW HARTFORD'S DECISION**
**UNDER THE ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW**

Alto concedes that the Plan includes a full grant of discretionary authority to Hartford, and thus agrees that "this Court should show deference to Hartford's determination to terminate plaintiff's LTD benefits . . ." (Plaintiff's Memorandum of Law in Opposition ("Plaintiff's Opp."), Doc. No. 24, p. 3); *Firestone Tire and Rubber Co.* v. *Bruch*, 489 U.S. 101, 115 (1989); *Metropolitan Life Ins. Co.* v. *Glenn*, 128 S.Ct. 2343, 2343-48 (2008)("*MetLife* v.

---

[1] While Alto appears to concede this point, the Court is respectfully referred to Defendants' Memorandum of Law in support of their Motion for Summary Judgment, Doc. No. 11 ("Defendants' Brief"), Point III for the argument that summary judgment dismissing Alto's claim for ancillary fringe benefits should be granted.

*Glenn*"); *Hobson* v. *Metropolitan Life Ins. Co.*, 547 F.3d 75, 82 (2d Cir. 2009). However, Alto incorrectly states that Hartford is not entitled to such deference if "plaintiff can demonstrate that [Hartford's] determination was: not supported by substantial evidence; arbitrary or capricious; or unreasonable." (Plaintiff's Opp, p. 3). This statement is incorrect. The U.S. Supreme Court has clearly ruled that the standard of review is *always* the arbitrary and capricious standard if there has been a grant of discretionary authority to the claim administrator. *MetLife* v. *Glenn*, 128 S.Ct. at 2350; *Conkright* v. *Frommert*, 130 S.Ct. 1640, 1646 (2010).

Alto also incorrectly asserts that "[w]here aspects of the claims administrator's review suggest that its adverse decision is influenced by a conflict of interests [*sic*], the court's deference might be far less, depending upon the evidence considered," and cites *McCauley* v. *First UNUM Life Ins. Co.*, 551 F.3d 126, 128 (2d Cir. 2008) in support of this contention. This is a clear misstatement of the holding in that case, particularly light of the Supreme Court's ruling in *MetLife* v. *Glenn*, that even if a conflict of interest is found to have influenced an administrator's decision-making (which is not applicable here), the arbitrary and capricious standard of review still applies. *McCauly*, 551 F.3d at 133. The two other cases cited by Alto in support of his argument that the court could review Hartford's adverse benefit determination with less deference, *Tocker* v. *Philip Morris Companies, Inc.*, 470 F.3d 481 (2d Cir. 2006) and *Harrison* v. *Metropolitan Life Ins. Co.*, 417 F.Supp.2d 424 (S.D.N.Y. 2006), both pre-date *MetLife* v. *Glenn* and therefore cannot be relied upon to support this position.

**POINT II**
**HARTFORD CONDUCTED A THOROUGH INVESTIGATION OF**
**ALTO'S LTD BENEFIT CLAIM AS PART OF ITS FULL AND FAIR REVIEW**

Hartford provided Alto with a full and fair review of his claim on administrative appeal by considering all of his statements, all of his treating physicians' office notes, reports and medical records, the surveillance video footage, and three separate independent peer reviewers' opinions to evaluate his numerous alleged disabling conditions. Based on the record as a whole, however, Hartford determined that Alto was no longer physically disabled from returning to full-time work at a sedentary occupation, although he was found to be mentally disabled under the Plan due to depression and was paid 24 months of Plan benefits based on that determination, even though it is a condition for which he had not been treated and had never claimed was disabling. (420 – 27).[2]

---

[2] All references to numbers "001" through "1840" refer to the Administrative Record, attached as Exhibits A and B to the Declaration of Pina Gulina, Doc. No. 13.

NY/590281v1                                              2

Accordingly, there is absolutely no legitimate basis for Alto's argument that Hartford acted arbitrarily and capriciously in finding that he did not meet the Plan's definition of physically disabled as of July 31, 2008.

### A.     ALTO IGNORES THE ROLE THAT MENTAL DISABILITY PLAYS IN THE ANALYSIS OF HIS CLAIM.

While Alto repeatedly alleges that Hartford cherry-picked information from his claim file to justify the denial of his claim, he ignores the fact that Hartford found him to be disabled by a mental condition and paid two years of Plan benefits although he never even claimed this as a basis for his claim in the first place. There is substantial evidence in the record, including evidence gathered from Alto's own treating physicians, to support the conclusion that even his claimed functional limitations stem from his depression. Alto's internist, Dr. Bruce K. Lowell, when speaking with Jerome Siegel, M.D. (one of the independent medical peer reviewers retained by Hartford), agreed that Alto could return to work on a physical basis but that his psychiatric impairments prevented him from doing so. (1496). Similarly, Dr. Lowell spoke with the independent peer reviewer Maureen Smith Ruffell, M.D., and stated that while Alto has been affected by medical problems, it was his "shattered self-esteem" that largely prevented him from returning to work. (1503). Based on the medical documentation and her conversations with Dr. Roca and Dr. Lowell, Dr. Ruffell concluded that Alto was disabled by depression. (1505).

Alto's mental disability is also significant in demonstrating that Hartford was not influenced by a conflict of interest, as the *only* reason Alto received an additional two years of LTD benefits after July 31, 2008 is because Hartford, on its own initiative, retained an independent psychiatric peer reviewer who found him to be mentally disabled due to depression. Alto never claimed a mental disability, and Hartford therefore had no obligation to evaluate this claim. *See Rizzi* v. *Hartford Life and Accident Ins. Co.*, 613 F.Supp.2d 1234, 1249 (D.N.M. 2009), *aff'd* No. 09-cv-2107, 2010 WL 2473858 (10th Cir. June 18, 2010). In light of Hartford's treatment of his claim, there is absolutely no basis for Alto's allegation that Hartford was influenced by financial bias.

### B.     THE RECORD DOES NOT SUPPORT ALTO'S CLAIM THAT HE WAS PHYSICALLY DISABLED DUE TO BILATERAL LEG EDEMA.

While Alto claimed on administrative appeal that he was physically disabled due to ITP, a history of pulmonary embolism, DVT, osteoarthritis, lower extremity venous insufficiency and neuropathy secondary to chemotherapy treatment for ITP, disequilibrium syndrome with vertigo, ataxia secondary to chemotherapy, history of seizure disorder, and diverticulosis (0669), he does not address *any* of these conditions in his opposition

papers, except to the extent that any of them might have been the cause of, or contributed to the existence of, edema, which is the only allegedly disabling condition discussed. Alto therefore appears to concede that none of his other allegedly disabling conditions were, in fact, disabling and that Hartford did not act arbitrarily and capriciously by refusing to award continuing LTD benefits based on those diagnoses.[3]

In support of his argument that Hartford acted arbitrarily in not finding him to be disabled due to lower extremity edema, Alto's opposition includes many conclusory and accusatory statements to the effect that Hartford failed to consider evidence relating to his complaints of bilateral leg edema. However, Alto's opposition does not identify any evidence that Hartford overlooked, much less any objective documentation in the record to support his argument that the extent of his edema was so severe as to constitute – on its own – a disabling condition. Alto's single self-report of the need to elevate his legs due to edema (0067) and the non-descriptive observations of swelling by Dr. Lowell cannot alone support a claim of disability. Yet, Alto asks this Court to rule that Hartford acted arbitrarily by not finding such meager proof to be evidence of a disabling condition. Significantly, Alto does not, and cannot, point to evidence in the record that supports his claim of disabling edema, such as leg girth measurements, documentation of compression stocking use after 2004, imaging studies documenting soft tissue swelling, or proof that he ever even saw a specialist, such as a vascular surgeon, to address the causes of the swelling and to obtain specialized treatment. Moreover, other than a January 25, 2008 office visit note stating that Alto presents "complaining of leg swelling" (840), none of Dr. Lowell's office visit notes from August 2, 2006 through April 30, 2008 identified edema as Alto's "chief complaint," nor do they state any need for Alto to elevate his legs during the day. (0832-911). Similarly, the podiatrist Alto consulted after the initial denial of his benefits, Mary Friscia, D.P.M., A.A.F.A.S., does not make any mention of leg swelling or edema in her December 1, 2008 letter to Dr. Lowell, in which she summarized her examination and treatment of Alto's feet. (1655 - 57). Hartford is entitled to require *some* objective documentation to support a claim of disability. *See Hobson*, 574 F.3d at 88 (holding that "it is not unreasonable for ERISA plan administrators to accord weight to objective evidence that a claimant's medical ailments are debilitating in order to guard against fraudulent or unsupported claims of disability."); *see also Fortune* v. *Group Long Term Disability Plan for Employees of*

---

[3] The Court is respectfully referred to Defendants' Brief, pp. 15-20 for an analysis of why the other conditions alleged in Alto's January 23, 2009 administrative appeal letter do not support a claim of disability.

*Keyspan Corp.*, 637 F. Supp. 2d 132, 143; *Magee* v. *Metropolitan Life Ins. Co.*, 632 F. Supp. 2d 308, 318 (S.D.N.Y. 2009); *Schnur* v. *CTC Communications Corp. Group Disability Plan*, No 05-cv-3297(RJS), 2010 WL 1253481, *14 (S.D.N.Y. Mar. 29, 2010). Since there is no such evidence to support Alto's claim of *disabling* leg edema, Hartford's determination that he was no longer physically disabled was certainly not arbitrary or capricious.

Although unable to identify any objective documentation in the administrative record regarding the severity of his bilateral leg edema, Alto nonetheless contends that Hartford purposefully disregarded evidence supporting his alleged need to keep his legs elevated, and argues that "[s]elective review of medical evidence" suggests that it was influenced by a conflict of interest and acted arbitrarily in denying his claim for continuing LTD benefits based on a physical disability. (Plaintiff's Opp., p. 11). However, just a few sentences earlier in his brief, Alto acknowledges that Hartford's July 31, 2008 letter specifically addressed his statement that he needed to keep his legs elevated during the day. Clearly, Hartford *did* evaluate Alto's claim that his edema was disabling due to his alleged need to keep his legs elevated, but still determined, in light of his treating physicians' statements that he was physically capable of returning to sedentary work and the lack of objective documentation regarding his edema, that this condition was not, in fact, disabling. (*See* Defendants' Brief, pp. 17-18).

Notably, the cases relied upon by Alto in support of his argument that the need to elevate his legs during the work-day to reduce swelling is sufficient to support a disability claim are completely inapposite because they both involve SSDI benefit claims. This is significant because the standard for disability for SSDI benefits is completely different from the governing ERISA LTD benefit plan in question in his matter, as is the Court's standard of review. *See Black & Decker Disability Plan* v. *Nord*, 538 U.S. 822 (2003); *Durakovic* v. *Building Service 32 BJ Pension Fund*, 609 F.3d 133, 141 (2d Cir. 2010); *Hobson*, 574 F.3d at 85. In both cases cited by Alto, *Melendez* v. *Astrue*, 630 F.Supp.2d 308 (S.D.N.Y. 2009) and *Graham* v. *Sullivan*, 794 F.Supp. 1045 (D. Ka. 1992), the Administrative Law Judge's ("ALJ") decisions were reversed and remanded based on standards unique to SSDI benefits – for example in *Graham* where the adverse benefit determination was reversed and remanded because, *inter alia*, the ALJ did not accord "substantial weight" to the treating physician's opinions. *Graham*, 794 F.Supp. at 1052. Moreover, these cases do not provide even tangential support for Alto's argument because, if he had provided Hartford with objective documentation of disabling leg edema for which he was being unsuccessfully treated – as was the case in *Melendez* and *Graham* – it may have resulted in an approval of his claim. As the

NY/590281v1                                                    5

administrative record documents, however, that was clearly not the case. Indeed, the opinion in *Graham* merely underscores the lack of evidence regarding Alto's edema, as the claimant in that case provided x-rays documenting soft tissue swelling in his ankle, numerous and consistent observations of swelling by his treating physicians despite treatment, and a diagnosis of tarsal tunnel syndrome. *Graham*, 794 F.Supp. at 1048-50. In contrast to the documentation presented in *Graham*, even Dr. Lowell stated that Alto's edema was "intermittent" (1496), and the record demonstrates that Alto's alleged need to elevate his legs is based on nothing more than his single instance of self-reporting on August 16, 2007. (0067).

### C. HARTFORD PROPERLY CONSIDERED ANTONELLI'S AND DR. SIEGEL'S INDEPENDENT MEDICAL PEER REVIEW REPORTS.

#### 1. Dr. Antonelli and Dr. Siegel Considered All of the Relevant Medical Documentation.

In his opposition, Alto purports to highlight flaws in the independent medical peer review conducted by Elena C. Antonelli, M.D., and then faults Hartford for improperly relying on her "flawed" opinions. However, rather than highlight actual flaws in Dr. Antonelli's and Hartford's review of his claim, Alto's argument is instead predicated on misrepresentations of the evidence provided to Hartford and reviewed by Dr. Antonelli. Alto's first concern with Dr. Antonelli's report is that when she described Dr. Lowell's March 28, 2006 Physical Capacities Evaluation form ("PCE") (1168-71), she described his response that Alto could stand or walk for "0" hours by writing that Dr. Lowell indicated that he "could not stand or walk." (729). This argument completely misrepresents Hartford and Dr. Antonelli's consideration of Dr. Lowell's opinions concerning Alto's physical functionality (and, inconsistently, faults Hartford *because* it considered his treating physician's opinions limiting his physical functionality although he previously argued that such consideration had not occurred).

First, and most significantly, Alto's argument that Hartford's review of his claim is flawed because it wrongfully considered Dr. Antonelli's allegedly unreasonable interpretation of Dr. Lowell's March 28, 2006 PCE is illogical because Hartford *awarded benefits* based in part on this PCE and continued to provide benefits until July 31, 2008. Therefore, even if Dr. Antonelli's interpretation was flawed (which is denied; *see* p. 7), Hartford's adverse benefit determination was in no way predicated upon her interpretation of that PCE. Hartford began the investigation that ultimately resulted in the denial of Alto's claim for continuing LTD benefits on August 15, 2007. (1008-18). Alto does not identify any evidence provided in response to *this* investigation of his ongoing

NY/590281v1                                  6

disability claim that was overlooked by Hartford or somehow misconstrued by Dr. Antonelli.

Second, it is also important to note that Alto's attempt to characterize Dr. Antonelli's review of Dr. Lowell's March 28, 2006 PCE as unreasonable has absolutely no basis in the record. Dr. Lowell's statement that Alto was walking twice per day was made on September 8, 2005 (1093), and by October 6, 2005, Dr. Lowell's records document that Alto was unable to walk more than a quarter-mile. (1090). Thus, it appears that Alto's ability to walk was declining at that time (which is why Hartford continued to pay benefits), and it was therefore perfectly reasonable for Dr. Antonelli to interpret Dr. Lowell's statement in his March 28, 2006 PCE as indicating that Alto could walk and stand for "0" hours to mean a minimal ability to walk and stand. Additionally, Alto incorrectly implies that Dr. Lowell was forced by Hartford to check a box characterizing for how long Alto could walk; however the PCE provided a blank space in which he could have stated fractions of an hour if he felt that was appropriate (as he did in his September 17, 2007 Attending Physician's Statement ("APS"), when he wrote in that Alto could walk for "5 minutes"). (075).

Alto also attempts to identify procedural defects in Hartford's review of his claim on administrative appeal by highlighting the fact that Dr. Antonelli's report does not specifically address Dr. Lowell's September 17, 2007 APS. While Dr. Antonelli's report does not specifically discuss this APS, this fact alone hardly substantiates Alto's argument that she must have overlooked it or that her medical conclusions were not based on "substantial evidence." Dr. Antonelli spends 5 of the 7 pages of her report summarizing years of medical records submitted by Alto, including Dr. Lowell's medical records from 2007 – 2008. (727-33). Thus, there can be no question that Dr. Antonelli's opinions were based on "substantial evidence" since she reviewed all contemporaneous office notes concerning Alto's treatment. Moreover, Dr. Antonelli spoke with Dr. Lowell on July 3, 2008 regarding his opinions as to Alto's physical functionality. (731). Therefore, Alto's argument that Dr. Antonelli's review of his claim was flawed because she did not consider the APS is completely undercut by the fact that she considered all of the relevant office notes and records, and, moreover, spoke directly with Dr. Lowell. Additionally, there is no question that *Hartford* considered this APS in reaching its adverse benefit determination (587), and Alto cannot therefore contend that its decision was not based on substantial evidence. Alto's opposition does not identify a single legitimate flaw in Dr. Antonelli's review of his claim, and Hartford therefore properly considered her medical opinions.

Alto also attacks the validity of the independent medical peer review conducted by Dr. Siegel claiming that his review was flawed because he did not spend sufficient time discussing Alto's bilateral leg edema. However, Alto ignores the fact that this is just one of the many conditions alleged to be disabling on administrative appeal (although Alto now appears to be abandoning his claim that any of these other conditions were disabling (Plaintiff's Opp., pp. 5 – 16)), and thus there was no reason for Dr. Siegel to devote the majority of his time and attention to this one condition – particularly in light of the paltry evidence in the record to support it.  Additionally, Alto fails to acknowledge that Dr. Siegel *did* consider his bilateral leg edema and found that Dr. Lowell's medical records did not contain any girth measurements, pictures or other objective evidence documenting the severity of his edema, but rather contained only casual observations of swelling by Dr. Lowell and Alto's own subjective complaints. (Plaintiff's Opp., pp. 9-11; 1496-99).  Dr. Siegel even spoke with Dr. Lowell regarding Alto's edema, and was advised that it was "intermittent," with no mention of any specific treatment being rendered for the swelling. (1496).

Finally, Alto provides a string cite of cases to support the proposition that claim administrators cannot arbitrarily disregard treating physicians' opinions or "uncritically accept" the opinions of its own reviewers (Plaintiff's Opp., pp. 11-12).  This argument is unpersuasive, however, because Alto does not actually identify any medical documentation or medical opinions proffered by his treating physicians that Hartford disregarded, particularly since both Dr. Lowell and Javier Roca M.D. (Alto's hematologist) advised that Alto was not prevented from returning to full-time sedentary work due to a physical disability.  Similarly, Alto does not provide any support for his allegation that Hartford did not undertake its own analysis of his claim and instead abdicated its responsibilities to the independent medical peer reviewers it retained.  Indeed, this claim is undermined by the administrative record, which amply demonstrates that Hartford undertook a careful analysis of each of his alleged claims. (*See* Defendants' Brief, pp. 1-12).  Alto also fails to cite any case law supporting the heading of this section, which is that "the opinion of Dr. Lowell as to plaintiff's functional capacity should be give more weight than the opinion of Hartford's non-examining physician consultants," a proposition that has been roundly rejected by both the Supreme Court and Second Circuit.  *Black & Decker Disability Plan* v. *Nord*, 538 U.S. 822 (2003); *Durakovic*, 609 F.3d at 141; *Hobson*, 574 F.3d at 85.

2. **Hartford is Entitled to Consider Dr. Antonelli's and Dr. Siegel's Summaries of their**

### Conversations with Alto's Treating Physicians

Alto insinuates that Hartford acted arbitrarily by considering Dr. Antonelli's and Dr. Siegel's summaries of their conversations with Dr. Lowell and Dr. Roca in their independent medical peer review reports. (Plaintiff's Opp., p. 12). As Alto notes, however, Hartford is not bound by the Federal Rules of Evidence during its administrative review of his claim, and the court is charged with considering the entire record in front of the claim administrator at the time a final determination is made. *See, e.g., King* v. *Cigna Corp.*, No 06-cv-6203T, 2008 WL 795823, *5 (W.D.N.Y. March 24, 2008)(refusing to limit the administrative record because portions contained hearsay, holding that the court was "charged with reviewing the record before the plan administrator . . . not to determine whether or not the evidence before the administrator would or would not be admissible at trial"); *See also Brown* v. *The Board of Trustees of the Building Service 32B-J Pension Fund*, 392 F.Supp.2d 434, 445 (E.D.N.Y. 2005)("It is beyond cavil that [the claim administrators] are permitted to consider medical reports, which are hearsay.  Indeed, if the Trustees could not consider medical reports, they would also have no basis in the paper record for concluding that a claimant was disabled."); *Cusson* v. *Liberty Life Assurance Co. of Boston*, 592 F.3d 215 (1st Cir. 2010)(refusing to find an independent medical reviewer's account of a conversation with a treating physician to be inadmissible hearsay because "a plan administrator is not a court of law and is not bound by the rules of evidence.")(internal quotation marks and citations omitted)).

Alto has not articulated any legitimate reason why Dr. Siegel's and Dr. Antonelli's summaries of their conversations with Dr. Lowell and Dr. Roca are "inherently unreliable" and should not be considered.  Given the foregoing, Hartford was well within its rights to consider the summaries provided by Dr. Antonelli and Dr. Roca during its review of Alto's claim.

**D.      HARTFORD PROPERLY CONSIDERED THE SURVEILLANCE VIDEO FOOTAGE**

Alto argues that the video surveillance footage does not provide any evidence that he is not in fact disabled because "on the first three days of surveillance, 75% of the sample period, next to nothing happened," and that on the fourth day he merely had lunch, went shopping, and carried firewood up the stairs. (Plaintiff's Opp., p. 14). According to Alto, it was arbitrary for Hartford to consider this surveillance at all in finding that he was physically capable of performing a sedentary occupation.  However, Hartford's consideration of the video surveillance footage is supported by the ruling in *Billinger* v. *Bell Atlantic*, 240 F. Supp. 2d 274 (S.D.N.Y. 2003),

*aff'd* 124 Fed. App'x 669 (2d Cir. 2004), where the court held that the administrator's determination to deny LTD benefits was not arbitrary and capricious and that the surveillance conducted on the claimant provided a useful source of information concerning the claimant's actual functionality as compared to her alleged functionality. *See also Corvi* v. *Eastman Kodak Co. Long Term Disability Plan*, No. 01 cv 365(DLC), 2001 WL 484008 (S.D.N.Y. May 8, 2001). In fact, contrary to Alto's facile excuses, the surveillance video footage is significant because it contradicts his own statements regarding his physical functionality and provides evidence that he was not as impaired as he claimed. (*See* Defendants' Brief, p. 20). While the surveillance video footage obtained is not itself proof of Alto's ability to perform full-time sedentary work, it certainly supports Hartford's finding that he had such functionality as of July 31, 2008. Furthermore, Alto's argument that the surveillance video footage does not provide some evidence of Alto's physical functionality because 75% of the time "next to nothing happened" is illogical. If an individual stays home for three days to rest up for a marathon and then runs the marathon on the fourth day, clearly that does not indicate that the individual is disabled because 75% of the time he or she chose not to engage in any activity. Manifestly, the mere absence of observable activity outside of the home is not evidence of Alto's lack of physical functionality. The surveillance shows no more or less than it documents – which is, that Alto *is* physically capable of doing certain activities, such as repeatedly walking up and down a staircase while carrying firewood. This proof can clearly be considered in evaluating his functionality.

      Moreover, Hartford did not give the surveillance video footage dispositive weight. Hartford's 6-page determination letter dated July 31, 2008 devotes a mere paragraph to a discussion of the surveillance video. (0438 – 443). The letter did not dwell on the surveillance video findings, but instead discussed whether the medical evidence provided by Alto established a continuing physical disability. Given the foregoing, there is no basis in law or fact for Alto's argument that Hartford gave undue weight to the video surveillance footage.

## **CONCLUSION**

      Viewed as a whole, the record demonstrates that Alto received a full and fair review of his claim, that Hartford's determination was based upon substantial evidence in the record, and that there is no indication that a conflict of interest infected the claim decision-making process. For the foregoing reasons, this Court should grant Defendants' motion for summary judgment dismissing Alto's Complaint on the grounds that its adverse benefit determination was not arbitrary and capricious.

Dated:  New York, New York
        August 20, 2010

                        Respectfully Submitted,

                          s/
                        MICHAEL H. BERNSTEIN (MB 0579)
                        ELIZABETH R. CHESLER (EC 1981)
                        SEDGWICK, DETERT, MORAN & ARNOLD LLP
                        **Attorneys for Defendants**
                         HARTFORD LIFE INSURANCE COMPANY and
                         the GROUP LONG TERM DISABILITY PLAN FOR
                         EMPLOYEES OF THE HEARST CORPORATION
                        125 Broad Street, 39th Floor
                        New York, New York 10004-2400
                        Telephone: (212) 422-0202
                        Facsimile:  (212) 422-0925

## CERTIFICATE OF SERVICE

I, ELIZABETH R. CHESLER, hereby certify and affirm that a true and correct copy of the attached **DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was served via ECF and regular mail on August 20, 2010, upon the following:

> Aba Heiman, Esq. (AH 3728)
> FUSCO, BRANDENSTEIN & RADA, P.C.
> 180 Froehlich Farm Boulevard
> Woodbury, New York 11797

s/_____
ELIZABETH R. CHESLER (EC 1981)

Dated:  New York, New York
        August 20, 2010

NY/590281v1