UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/11
```

-------------------------------------------X

THOMAS ALTO,

                Plaintiff,

          -against-

HARTFORD LIFE INSURANCE COMPANY and the
GROUP LONG TERM DISABILITY PLAN FOR
EMPLOYEES OF THE HEARST CORPORATION,

                Defendants.

-------------------------------------------X

                              09 Civ. 07763 (DAB)
                              MEMORANDUM & ORDER

DEBORAH A. BATTS, United States District Judge.

    On September 8, 2009, Thomas Alto ("Plaintiff") filed suit against Hartford Life Insurance Company and the Group Long Term Disability Plan for Employees of the Hearst Corporation ("Defendants"), seeking, inter alia, judicial review of Defendants' denial of Plaintiff's claim for long-term disability benefits due to physical disability pursuant to 29 U.S.C. § 1132(a)(1)(B).  Now before the Court is Defendants' Motion for Summary Judgment.

    For the reasons set forth herein, Defendants' Motion for Summary Judgment is GRANTED.

1

## I. BACKGROUND

Except where noted, the following facts are undisputed. Plaintiff worked as a product manager for The Hearst Corporation for nine and a half years, until May 3, 2004. (Defs. 56.1 Stmt. ¶ 1). Plaintiff was first scheduled to undergo hip replacement surgery in April 2004, but the surgery was canceled due to Plaintiff's low blood platelet count. (Id. ¶ 19-20). In May 2004, Plaintiff underwent hip replacement surgery and suffered a pulmonary embolism as a complication of the surgery. (Id. ¶¶ 21-22). Plaintiff was then diagnosed with joint disease and dyscrasia (a blood disorder), and received short-term disability benefits from May 11, 2004 to November 8, 2004. (Id. ¶¶ 23-24). Defendant Hartford ("Hartford"), administrator of the Group Long-Term Disability Plan for Employees of the Hearst Corporation ("Plan"), advised Plaintiff to apply for Long-Term Disability ("LTD") benefits prior to the expiration of his short-term disability benefits. (Id. ¶ 25).

Plaintiff applied for LTD benefits under the Plan on October 4, 2004. (Defs. 56.1 Stmt. ¶ 26). Plaintiff's internist, Dr. Lowell, submitted an evaluation detailing, among other things, Plaintiff's inability to stand for one hour, drive, and concentrate. (See Pl.'s 56.1 Cntr. Stmt. ¶ 97; Defs. 56.1 Stmt. ¶ 35). Plaintiff's hematologist, Dr. Roca, notified

2

Hartford that Plaintiff received chemotherapy to treat his blood disorder.  (Defs. 56.1 Stmt. ¶ 41).  Hartford determined that Plaintiff met the Plan's definition of disabled - unable to perform his "own" occupation - and approved Plaintiff's LTD benefits due to physical disability on October 26, 2004.  (Id. ¶ 48).  Hartford continued to monitor Plaintiff's medical condition and awarded him LTD benefits due to physical disability through November 9, 2006.  (Id. ¶ 102).

In May 2006, Hartford notified Plaintiff that he would soon have to meet the Plan's more stringent definition of disability - unable to perform "any" occupation.  (Defs. 56.1 Stmt. ¶ 103).  On September 6, 2006, Dr. Lowell faxed Hartford a Physical Capacities Evaluation ("PCE") that advised that Alto could sit for one hour at a time for a total of two hours per day, but noted that Alto was "very restless" and had "constant pain."  (Id., ¶¶ 106, 108.)  Dr. Lowell also claimed that Alto could not lift or carry items of any weight, nor climb, balance, stoop, kneel, crouch, or crawl due to bad balance.  (Id., ¶ 111.)  By letter dated November 1, 2006, Hartford notified Plaintiff that Plaintiff was approved for LTD benefits under the "any" occupation test.  (Id., ¶ 125.)  The letter advised that "[p]eriodically, we will provide you with supplementary claim

3

forms so you can furnish us with continued proof of Disability."
(Id.)

By letter dated August 15, 2007, and again on September 6, 2007, Hartford wrote Alto advising that it needed information to evaluate his claim, including an authorization to obtain and release information, a claimant questionnaire, and an attending physician's statement. (Def.'s 56.1 Stmt., ¶ 126.)  On September 17, 2007, Dr. Lowell completed an attending physician's statement that said Alto could stand for "0" hours at a time, could sit for one hour at a time for a total of one hour per day, and could walk for five minutes at a time. (Id., ¶ 130; Pl.'s 56.1 Cntr. Stmt. ¶ 97.)  On or around September 17, 2007, Alto submitted his claimant questionnaire, which said that he had complications from peripheral vascular disease, shortness of breath on slight exertion, extreme fatigue, malaise, edema in his right and left legs and feet, problems focusing his eyes, pain in his right and left legs, and ambulation problems, particularly with balance. (Def.'s 56.1 Stmt., ¶ 134.)

On or around November 30, 2007, Hartford's Special Investigation Unit ("SIU") reviewed Alto's claim and accepted it for investigation. (Id., ¶ 160.)  Plaintiff was observed for two days in December 2007 and two days in January 2008. (Id. ¶ 162). Alto was observed walking up and down stairs, pulling a

4

trashcan, bending at the waist, carrying firewood, driving,
sitting for approximately one hour, and standing for fifteen
minutes. (Id., ¶¶ 163-169.)

In June 2008, Hartford also hired Dr. Elena Antonelli to
conduct an independent medical record review of Plaintiff's
claim. (Id. ¶ 175). Dr. Antonelli reviewed medical evaluations
reiterating that Plaintiff still could not stand for more than
one hour, could now drive in a limited capacity, and was still
mentally affected by his physical limitations. (See Pl.'s 56.1
Cntr. Stmt. ¶ 110, 130; Defs. 56.1 Stmt. ¶ 110, 120, 130, 176).
After observing surveillance video footage, Dr. Antonelli found
that Plaintiff would likely be able to do "light duty" with
concessions based upon his hip replacement. (Defs. 56.1 Stmt. ¶
182) A Hartford-ordered employability analysis listed two
sedentary occupations Plaintiff should be able to perform. (Id. ¶
187). Based on the above information, Hartford determined that
Plaintiff no longer met the Plan's standard for physically
disabled on July 31, 2008. (Id. ¶ 197). Plaintiff objected to
this decision through administrative appeal, on the basis that
his medical condition had not improved so as to alter his status
of disabled due to physical disability. (Id. ¶¶ 204-205).

Plaintiff submitted additional medical records, and Hartford
afforded Plaintiff a review of his claim denial as required by

ERISA.  29 U.S.C. § 1133(2); (Defs. 56.1 Stmt. ¶¶ 214-216).

Hartford hired Dr. Siegel as an independent medical record

reviewer to evaluate Plaintiff's physical limitations.  Dr.

Siegel evaluated Plaintiff's medical records and discussed his

physical limitations with Dr. Lowell, Dr. Roca, and Dr. Shapiro,

Plaintiff's ophthalmologist.  (Defs. 56.1 Stmt. ¶¶ 248-251).  Dr.

Siegel determined that Plaintiff should be physically capable "of

performing sedentary light physical demand work activities."

(Defs. 56.1 Stmt. ¶ 259).

Hartford also hired Dr. Ruffell as an independent

psychiatric record reviewer to evaluate Plaintiff's psychological

condition. (Defs. 56.1 Stmt. ¶ 248).  Dr. Ruffell determined that

Plaintiff's mental state affected his "occupational

functionality." (See Defs. 56.1 Stmt. ¶ 267).   On May 5, 2009,

Hartford upheld its denial of his claim for LTD benefits due to

physical disability, but awarded Plaintiff LTD benefits due to

mental illness. (Defs. 56.1 Stmt. ¶ 270).  Plaintiff was

notified that these benefits were limited to twenty-four months

under the Plan.  (Id. ¶ 273).  Plaintiff was also notified of his

right to seek judicial review of this decision pursuant to ERISA

§502(a).  (Id. ¶ 274).  Plaintiff filed suit on September 8,

2009, alleging that Defendant Hartford operated under a conflict

of interest and the decision that Plaintiff was no longer

6

physically disabled was arbitrary and capricious.  (See
generally, Compl.)

## II. DISCUSSION

A.   The Summary Judgment Standard

A district court will grant summary judgment only when there
is "no genuine dispute as to any material fact," and the moving
party is entitled to judgment as a matter of law.  Fed. R. Civ.
P. 56(a); see also Hermes Int'l v. Lederer de Paris Fifth Ave.,
Inc., 219 F.3d 104, 107 (2d Cir. 2000). Genuine disputes of
material fact cannot be created by mere conclusory allegations;
summary judgment is appropriate only when, "after drawing all
reasonable inferences in favor of a non-movant, no reasonable
trier of fact could find in favor of that party." Heublein v.
United States, 996 F.2d 1455, 1461 (2d Cir. 1993) (citing
Matsushita Elec. Industr. Co. v. Zenith Radio Corp., 475 U.S.
574, 587-88 (1986)).

In assessing when summary judgment should be granted, "there
must be more than a 'scintilla of evidence' in the non-movant's
favor; there must be evidence upon which a fact-finder could
reasonably find for the non-movant." Id. (citing Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). While a court

7

must always "resolv[e] ambiguities and draw [ ] reasonable inferences against the moving party," Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson, 477 U.S. at 252), the non-movant may not rely upon "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Id. at 12. Instead, when the moving party has documented particular facts in the record, "the opposing party must 'set forth specific facts showing that there is a genuine issue for trial.'" Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). Establishing such facts requires going beyond the allegations of the pleadings, as the moment has arrived "'to put up or shut up.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted).


B.   ERISA Standard of Review

        The Supreme Court held that a de novo standard of review is proper in ERISA actions challenging denials of benefits. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). However, if a benefits plan has delegated discretionary authority to a plan administrator, the reviewing court must employ a deferential standard of review, and can only reverse a denial of benefits if the administrator's decision was "arbitrary and capricious," or "without reason, unsupported by substantial

8

evidence or erroneous as a matter of law." Id.; Hobson v. Metropolitan Life Ins. Co., 574 F.3d 75, 83 (2d Cir. 2009). This deferential standard of review always applies to a plan administrator's determination, regardless of whether a plaintiff alleges a conflict of interest on the part of the plan administrator. Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 115 (2008); Hobson v. Metropolitan Life Ins. Co., 574 F.3d 75, 82-83 (2d Cir. 2009). A court should weigh a potential conflict of interest as a "factor in determining whether there is an abuse of discretion" on the part of the administrator, while continuing to apply a deferential standard of review to the decision of a potentially conflicted administrator. See Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 115 (2008).

C.  Plaintiff's Claims

     1.  Standard of Review

     Plaintiff admits that Defendant Hartford is the designated administrator for the Plan and has discretionary authority to determine claims. (Pl.'s Opp. at 3). Plaintiff alleges that Hartford's reliance on the opinion of Dr. Siegel to find that Plaintiff was no longer physically disabled is evidence of a conflict of interest, since Dr. Siegel consults often for Hartford. See Jacoby v. Hartford Life and Acc. Ins. Co., 07 Civ.

9

4627, 2008 WL 4361256, at **1-2 (S.D.N.Y. Sept. 24, 2008). Given that Hartford extended Alto's benefits for an additional 24 months based on mental disability, the evidence on the record before this Court does not support the conclusion that Hartford's consideration of Dr. Siegel's opinion on physical disability shows that it operated under a conflict of interest. Accordingly, this Court will review Hartford's decision to deny Plaintiff's claim for LTD benefits due to physical disability under the deferential arbitrary and capricious standard.

    2.  Plaintiff's Administrative Appeal

    Upon Plaintiff's administrative appeal of the decision denying him LTD benefits due to physical disability, Hartford granted Plaintiff a "full and fair" review of the decision as required by ERISA. 29 U.S.C. § 1133(2).  The Supreme Court held that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003).  In determining that Plaintiff was not physically disabled under the Plan's definition, Dr. Siegel reviewed the records of Plaintiff's personal physicians, Dr.

10

Lowell and Dr. Roca, and the findings of Hartford's contracted medical record reviewer, Dr. Antonelli. (Def.'s Mem. L. 10-11).

Plaintiff alleges that Dr. Siegel's reliance on Dr. Antonelli's reports and certain portions of medical records from Plaintiff's treating physicians displays a bias in favor of Hartford.  Although Dr. Siegel is not obligated to explain the weight he assigned to each of Plaintiff's medical records, he did specify that Plaintiff's own doctors were unable to state specifically why he would be physically unable to perform "any" occupation.  (See Def.'s Mem. Law 11).  There is insufficient evidence of a conflict of interest on the part of Dr. Siegel, and therefore no reason to disregard his findings.

Plaintiff claims that Hartford acted arbitrarily and capriciously in finding that Plaintiff's bilateral leg swelling did not render him disabled under the Plan's definition.  (Pl.'s Mem. Law 8-11.)  Dr. Siegel's report, however, indicates that Dr. Siegel reviewed Plaintiff's medical records related to the bilateral leg swelling and discussed the problem with Plaintiff's treating physician, Dr. Lowell.  (Gulino Decl. Ex. B, p. 1496.) Dr. Siegel noted that the leg swelling was intermittent, that there has been no change, and there is no indication that Plaintiff or his treating physician attempted to treat the

11

problem, whether through use of compression stockings or through examination by a vascular or vein specialist.  (Id.)

Furthermore, after denying Plaintiff's claim for LTD benefits due to physical disability, Hartford engaged Dr. Ruffel, an independent psychiatric medical record reviewer, to determine if Plaintiff was disabled due to mental disability.  (Def.'s Mem. L. 11-12).

Based upon Dr. Ruffel's findings, Hartford determined that Plaintiff's depression rendered him disabled due to mental disability.  (Def.'s Mem. L. 11-12).  Hartford awarded Plaintiff LTD benefits due to mental disability for the full twenty-four months allowed under the Plan, with payments ending July 30, 2010.  (Def.'s Mem. L. 11-12).  Hartford was not obligated to seek the input of an independent psychiatric record reviewer because Plaintiff never filed a claim for LTD benefits based upon mental disability.  (Id.)  Hartford's discretionary award of Plaintiff's LTD benefits due to mental disability further demonstrates that Hartford's decision was not arbitrary or capricious, nor influenced by a conflict of interest. [1]

---

[1] Hartford also acknowledges that Plaintiff currently receives Social Security Disability Insurance ("SSDI"), but it is not clear whether the Social Security Administration ("SSA") reviewed Plaintiff's status after its initial determination of Plaintiff's disability.  It is also unknown if the SSA found Plaintiff disabled due to mental disability.  Regardless, plan administrators are not considered "arbitrary or capricious" for

### 3.   Plaintiff's Fringe Benefits

The Second Circuit held that "Even where non-ERISA benefits (or exclusion therefrom) turn on a person's status under an ERISA plan, the ERISA fiduciary duty cannot extend to more than the person's qualification for that status."  Bell v. Pfizer, Inc., 626 F.3d 66, 78 (2d Cir. 2010).

It is irrelevant that Plaintiff's ancillary benefits may be affected by Defendants' denial of his LTD benefits claim. Hartford is not a proper defendant with respect to benefit plans it does not insure or administer.  Plaintiff apparently concedes this point, as he fails to address it in his motion papers.


### III. CONCLUSION

Because the evidence on the record does not support the existence of a conflict of interest, because Hartford's denial of continued LTD benefits was not arbitrary or capricious, and because Hartford is not the proper defendant in a claim for fringe benefits, Defendants' Motion for Summary Judgment is GRANTED.

---

failing to reach the same disability determination as the SSA, nor are they required to do so by ERISA.  Hartford properly identifies its reasons for arriving at the opposite conclusion.  See Hobson v. Metropolitan Life Ins. Co., 574 F.3d 75, 91-92 (2d Cir. 2009); Def. Mem. L. 20.

The Clerk of Court is directed to CLOSE the docket in this case.

SO ORDERED.


Dated:    New York, New York

          March 31 , 2011


                              *Deborah A. Batts*

                              DEBORAH A. BATTS
                         United States District Judge

14